FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 2 1 2026

TAMMY H. DOWNS, CLERK
By: DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**THE CINCINNATI INSURANCE COMPANY,** **PLAINTIFF**

**v.** **No.** 3:26-cv-240-DPM

**REFUGE CHURCH OF THE ASSEMBLIES OF GOD, INC. OF JONESBORO, ARKANSAS;**
**ARKANSAS DISTRICT COUNCIL OF THE ASSEMBLIES OF GOD;**
**GENERAL COUNCIL OF THE ASSEMBLIES OF GOD;**
**CHARLES MICHAEL GLOVER;**
**BROTHERHOOD MUTUAL INSURANCE COMPANY;**
**CHURCH MUTUAL INSURANCE COMPANY, S.I.;**
**STEPHANIE DAVIS;**
**SAMANTHA DAVIS;**
**ELIZABETH DRYER;**
**VICTORIA COLLINS;**
**TAYLOR PERRIN; and**
**JANE DOE 1** **DEFENDANTS**

This case assigned to District Judge Marshall
and to Magistrate Judge Volpe

**COMPLAINT FOR DECLARATORY JUDGMENT**

Comes Plaintiff, The Cincinnati Insurance Company ("Cincinnati"), by and through its attorneys, RMP LLP, and for its Complaint for Declaratory Judgment, states as follows:

**I. Parties, Jurisdiction, and Venue**

1. Cincinnati is an Ohio corporation, with its principal place of business in Ohio.

2. Refuge Church of the Assemblies of God, Inc. of Jonesboro, Arkansas ("Refuge Church") is an Arkansas corporation with its principal place of business in Arkansas.

3. Arkansas District Council of the Assemblies of God is an Arkansas corporation with is principal place of business in Arkansas.

4. General Council of the Assemblies of God is an entity registered in the State of Missouri with its principal place of business in Missouri.

5. Charles Michael Glover is a citizen of the State of Arkansas.

6. Brotherhood Mutual Insurance Company is an Indiana corporation with its principal place of business in Indiana.

7. Church Mutual Insurance Company is a Wisconsin corporation with its principal place of business in Wisconsin.

8. Stephanie Davis is a citizen of the State of Arkansas.

9. Samantha Davis is a citizen of the State of Arkansas.

10. Elizabeth Dryer is a citizen of the State of Tennessee.

11. Victoria Collins is a citizen of the State of Florida.

12. Taylor Perrin is a citizen of the State of Arkansas.

13. Jane Doe 1 is a citizen of the State of Arkansas.

14. Cincinnati issued a Commercial General Liability policy to First Assembly of God – Jonesboro. In the current action, Plaintiff seeks to have the Court determine its obligation to defend and indemnify Refuge Church of the Assemblies of God, Inc. of Jonesboro, Arkansas ("Refuge Church") and Charles Michael Glover, in the Craighead County, Arkansas, Circuit Court, case number 16JCV-26-1412. (Exhibit A, Complaint.)

15. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because Plaintiff and the Defendants are diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16. Venue is proper because the events which give rise to the current action allegedly occurred in Craighead County, Arkansas, which is within this judicial district.

**II. The Underlying Lawsuit**

17. Stephanie Davis, Samantha Davis, Elizabeth Dryer, Victoria Collins, Taylor Perrin, and Jane Doe 1 ("the Underlying Plaintiffs") filed suit against Refuge Church, Arkansas District

Council of the Assemblies of God, General Council of the Assemblies of God, Charles Michael Glover, Brotherhood Mutual Insurance Company, and Church Mutual Insurance Company on May 20, 2026, ("the Underlying Lawsuit").

18. The Underlying Plaintiffs allege they suffered injuries from sexual misconduct of a pastor named Tony Waller from 2004 to 2014.

19. They allege Tony Waller committed this misconduct while he was a children's pastor at Refuge Church.

20. They allege that Refuge Church and the head pastor, Glover, helped cover up Waller's misconduct.

21. They further allege that the district level and national level Assemblies of God entities aided in covering up Waller's misconduct.

22. The Underlying Plaintiffs allege that Waller's inappropriate conduct towards minors began, at the latest, in 1999.

23. They allege that Glover and Refuge Church were aware of the inappropriate conduct starting on April 24, 2000, when local police alerted Glover that Waller had been banned from a local elementary school for sexually abusing or trying to sexually abuse an 11-year-old girl.

24. They allege Glover alerted the church leadership of this incident.

25. They allege Waller placed hidden cameras in a bathroom and a separate building that included a shower at the church around the year 2000.

26. They allege Waller would have children take off their clothes and perform a series of stretches that he would use his hidden cameras to film through a hole in a door where a doorknob was supposed to be.

27. They allege that there was a list of stretches for the children to perform and instructions on exactly where the children should stand and face posted on the wall of the bathroom.

28. They allege that this bathroom was used by people other than children and that the list of stretches was visible to everyone.

29. They allege Waller sexually abused Stephanie Davis, Samantha Davis, Elizabeth Dryer, and Victoria Collins from 2001 to 2005 at the church and filmed some of this molestation and misconduct.

30. They allege Waller sexually abused Taylor Perrin and Jane Doe 1 at the church from 2009 to 2014 and filmed some of this molestation and misconduct.

31. They allege that Glover found the hidden camera in 2004 and also saw the list of stretches posted on the wall that Waller was having the children perform.

32. They allege that Glover's only action was having a maintenance man fill the hole in the door that Waller was using to film the children.

33. They also allege that Elizabeth Dryer and her mother met with Glover in 2004 and reported Waller's hidden cameras and molestation to him.

34. They allege that Waller was caught again filming a young girl from church undress in 2006 and that this incident was reported by the victim's mother to Glover.

35. Waller was ultimately arrested in 2015 and was subsequently sentenced to life in prison.

36. The Underlying Plaintiffs' first cause of action against Refuge Church and Glover is negligent hiring of Waller.

37. The Underlying Plaintiffs' second cause of action against Refuge Church and Glover is negligent supervision of Waller.

38. The Underlying Plaintiffs' third cause of action against Refuge Church and Glover is negligent retention of Waller.

39. The Underlying Plaintiffs' fourth cause of action against Refuge Church and Glover is for their own direct negligence in failing to protect the Underlying Plaintiffs from Waller's misconduct and molestation.

40. The Underlying Plaintiffs' fifth cause of action against Refuge Church and Glover is intentional infliction of emotional distress

41. The Underlying Plaintiffs' sixth cause of action seeks to hold Refuge Church vicariously liable for Glover's conduct.

42. The Underlying Plaintiffs' seventh cause of action against Refuge Church and Glover is for civil action by a crime victim.

43. The Underlying Plaintiffs' eighth cause of action against Refuge Church and Glover is violating the Arkansas Child Maltreatment Act.

44. The Underlying Plaintiffs' ninth cause of action seeks to hold Refuge Church vicariously liable for Glover violating the Arkansas Child Maltreatment Act.

45. No one provided any notice of the sexual molestation and sexual misconduct to Cincinnati until 2026.

## III. The Insurance Policy

### A. The Commercial General Liability Policy

46. Cincinnati issued a series of two commercial general liability policies to First Assembly of God – Jonesboro with effective dates of March 9, 2011, to March 9, 2017. (Exhibit B, Policies.)

47. The policies identify First Assembly of God – Jonesboro as the sole named insured.

48. The policies have liability limits of $1,000,000 per occurrence and $3,000,000 in the aggregate.

49. Section I of the GA 101 policy form sets forth the policies' insuring agreement and exclusions. According to the Section I insuring agreement Cincinnati agrees to defend and indemnify the insured as follows for Coverage A:

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

***

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

**c.** "Bodily injury" or "property damage" which:

**(1)** Occurs during the "coverage term"; and

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

> **(3)** First observes, or reasonably should have first observed, the "bodily injury" or "property damage";
>
> **(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or
>
> **(5)** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

50. Section I of the GA 101 policy form sets forth the policies' insuring agreement and exclusions. According to the Section I insuring agreement Cincinnati agrees to defend and indemnify the insured as follows for Coverage B:

> **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.
>
> ***
>
> **b.** This insurance applies to "personal and advertising injury" only if:
>
> **(1)** The "personal and advertising injury" is caused by an offense arising out of your business; and
>
> **(2)** The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and
>
> **(3)** Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.
>
> **c.** "Personal and advertising injury" caused by an offense which:
>
> **(1)** Was committed during the "coverage term"; and
>
> **(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have been committed;
>
> includes any continuation, change or resumption of that offense after the end of the "coverage term" in which it first became known by you.
>
> **d.** You will be deemed to know that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":
>
> **(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;
>
> **(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

> **(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";
>
> **(4)** Becomes aware, or reasonably should have become aware, by any means, other than as described in **(3)** above, that the offense had been committed or had begun to be committed; or
>
> **(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

51. The Cincinnati policies also include a number of Section I exclusions, which are also located primarily in the GA 101 policy form. The potentially relevant exclusions include the following for Coverage A:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected or Intended Injury**
>
> "Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

52. The Cincinnati policies also include a number of Section I exclusions, which are also located primarily in the GA 101 policy form. The potentially relevant exclusions include the following for Coverage B:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Knowing Violation of Rights of Another**
>
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".
>
> ***
>
> **d. Criminal Acts**
>
> "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

53. The GA 101 policy form provides who is an insured in Section II – Who is An Insured:

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

***

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

***

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

***

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

54. The GA 101 form includes a number of potentially relevant definitions including the following:

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional

period of time will be deemed to be part of the last preceding "coverage term".

***

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

55. In the Section IV – Commercial General Liability Conditions, the policies provide the following obligations an insured has:

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or a "personal and advertising injury" offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

***

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**
No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with. A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

56. The Commercial General Liability Coverage is subject to the provisions of Endorsement Form GA 214 08 02 (Sexual Misconduct or Sexual Molestation Liability), subject to replacement Limits of One Million Dollars ($1,000,000) Each Claim, One Million Dollars ($1,000,000) Annual Aggregate, and subject to the following pertinent provisions, including pertinent exclusionary provisions:

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Except for the insurance provided by this endorsement, the Coverage Part to which this endorsement is attached does not apply to any claim or suit seeking damages arising out of any actual or alleged act of "sexual misconduct or sexual molestation".

**1.** The following additional coverage is added to **SECTION I - COVERAGES**:

**Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of injury to a person arising out of an act of "sexual misconduct or sexual molestation" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "sexual misconduct or sexual molestation" to which this insurance does not apply. We may, at our discretion, investigate any act of "sexual misconduct or sexual molestation" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **5. LIMITS OF INSURANCE** of this endorsement; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under the insurance provided by this endorsement.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS**.

**b.** This insurance applies to injury only if:

**(1)** The injury is caused by "sexual misconduct or sexual molestation" that takes place in the "coverage territory";

**(2)** The "sexual misconduct or sexual molestation" occurs during the policy period; and

**(3)** Prior to the "coverage term" in which "sexual misconduct or sexual molestation" occurs, you did not know, per Paragraph **1.d.** below that the "sexual misconduct or sexual molestation" had occurred or had begun to occur, in whole or in part.

**c.** "Sexual misconduct or sexual molestation" which:

**(1)** Occurs during the "coverage term"; and

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

includes any continuation, change or resumption of that "sexual misconduct or sexual molestation" after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that "sexual misconduct or sexual molestation" has occurred at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "sexual misconduct or sexual molestation" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "sexual misconduct or sexual molestation";

**(3)** First observes, or reasonably should have first observed, the "sexual misconduct or sexual molestation";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "sexual misconduct or sexual molestation" had occurred or had begun to occur; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "sexual misconduct or sexual molestation" was substantially certain to occur.

**2. EXCLUSIONS**

This insurance does not apply:

**a.** To an insured who actually or allegedly personally participated in or condoned any act of "sexual misconduct or sexual molestation".

However, Paragraph **a.** shall not apply unless and until one of the following occurs:

**(1)** The insured is convicted of a criminal offense arising from the alleged "sexual misconduct or sexual molestation";

**(2)** The insured pleads guilty or no contest to a criminal charge or charges arising from the alleged "sexual misconduct or sexual molestation";

**(3)** The insured admits to their personal participation in or condoning of the alleged "sexual misconduct or sexual molestation"; or

**(4)** The insured's personal participation in or condoning of the alleged "sexual misconduct or sexual molestation" is determined to have occurred by a court of competent jurisdiction in a civil action, at which point our duty to defend the insured or pay damages on behalf of the insured shall cease.

**b.** To the cost of defense of, or the cost of paying any fines for any person resulting from actual or alleged violation of any penal or criminal statute.

**c.** To any injury arising out of any actual or alleged violation of a penal statute or ordinance committed by or with the knowledge of consent of any insured.

***

**g.** To any exemplary or punitive damages.

**h.** To any liability arising from or in connection with:

**(1)** "Sexual misconduct or sexual molestation" which occurred prior to the beginning of the consecutive annual period of the policy period in which insurance coverage is sought; or

**(2)** "Sexual misconduct or sexual molestation" committed or allegedly committed by one person, or by two or more persons acting together, the first of which occurred prior to the beginning of the consecutive annual period of the policy period in which insurance coverage is sought.

***

**4.** **SECTION II - WHO IS AN INSURED** is deleted and replaced with the following:

**a.** If you are designated in the Declarations as:

***

**(4)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

***

**b.** Each of the following is also an insured:

**(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

***

**(2)** Any of your members, but only with respect to their liability for your activities or activities they perform on your behalf.

(3) Any trustees, official, member of the board of governors or clergyman but only with respect to their duties as such.

***

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

5. **SECTION III - LIMITS OF INSURANCE** is deleted and replaced with the following:

Regardless of the number of insureds under this insurance or of the number of claims made or "suits" brought, our liability is limited as follows:

**a.** Our total liability for all damages because of all injury to which this insurance applies shall not exceed the Limits of Insurance stated in the Schedule as Annual Aggregate.

**b.** Subject to the Annual Aggregate provisions, our total liability for all damages because of all injury arising out of "each claim" covered by this insurance shall not exceed the Limit of Insurance stated in the Schedule as applicable to "Each Claim".

The limits of this endorsement apply separately to each "coverage term".

6. **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended as follows:

Condition **2. Duties in the Event of Occurrence**, **Offense**, **Claim or Suit** is deleted and replaced with the following:

**2. Duties in the Event of Occurrence**, **Offense**, **Sexual Misconduct or Sexual Molestation**, **Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence", offense or "sexual misconduct or sexual molestation" which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence", offense or "sexual misconduct or sexual molestation" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence", offense or "sexual misconduct or sexual molestation".

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

***

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**7. SECTION V - DEFINITIONS** is amended as follows:

**1.** The following definitions are hereby added:

**a.** "Each claim" means that regardless of:

**(1)** The number of acts of "sexual misconduct or sexual molestation";

**(2)** The period of time over which such acts occurs; or

**(3)** The number of persons acted upon,

all injury arising out of all covered acts of "sexual misconduct or sexual molestation" by the same person, or by two or more persons acting together, will be considered one claim, subject to the Each Claim Limit of Insurance in force at the time the first act covered by this or any other policy issued by us took place.

**b.** "Sexual misconduct or sexual molestation" means actual or alleged physical misconduct or physical molestation arising out of a single, continuous or repeated exposure of one or more persons to acts of a sexual nature committed by:

**(1)** One person; or

**(2)** Two or more persons acting together or in related acts or series of acts.

57. The Commercial General Liability Coverage is subject to the provisions of Endorsement Form **GA 231 10 01 (Religious Institutions Commercial General Liability Endorsement)**, which sets forth the following provisions:

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A. SECTION I - COVERAGES** is revised as follows:

**1. Corporal Punishment**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, a. Expected or Intended Injury** is deleted in its entirety and replaced by the following:

**a. Expected or Intended Injury**

"Bodily Injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from:

**(1)** The use of reasonable force to protect persons or property; or

**(2)** Corporal punishment to any student or pupil administered by or at the direction of any insured.

***

**B.** **SECTION II - WHO IS AN INSURED,** Item **2.** is revised to add the following:

**2.** Each of the following is also an insured:

**e.** Any of your members, but only with respect to their liability for your activities or activities they perform on your behalf.

**f.** Any trustees, official, member of the board of governors or clergy but only with respect to their duties as such.

**B. The Commercial Umbrella Liability Policy**

58. The Policy includes Commercial Umbrella Liability Coverage ("Umbrella"), subject to Limits of One Million Dollars ($1,000,000) Each Occurrence and Aggregate. The Commercial Umbrella Liability Coverage is subject to the following pertinent provisions, set forth in Form US 101 UM 12 04 (Commercial Umbrella Liability Coverage Form).

**SECTION I - COVERAGE**

**A. Insuring Agreement**

**1.** We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

**a.** Which is in excess of the "underlying insurance"; or

**b.** Which is either excluded or not insured by "underlying insurance".

**2.** This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

**a.** The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**b.** The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or

**c.** The "personal and advertising injury" results from an "occurrence" that takes place during the policy period shown in the Declarations; and

**d.** Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, or a "personal and advertising injury" offense is committed, you did not know, per Paragraph **5.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, or that the "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part.

**3.** "Bodily injury" or "property damage" which:

**a.** Occurs during the "coverage term"; and

**b.** Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have occurred;

includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

**4.** "Personal and advertising injury" caused by an offense which:

**a.** Was committed during the "coverage term"; and

**b.** Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have been committed;

includes any continuation, change or resumption of that "personal and advertising injury" offense after the end of the "coverage term" in which it first became known by you.

**5.** You will be deemed to know that "bodily injury" or "property damage" has occurred, or that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

**a.** Reports all, or any part, of the "bodily injury", "personal and advertising injury" or "property damage" to us or any other insurer;

**b.** Receives a written or verbal demand or claim for damages because of the "bodily injury", "personal and advertising injury" or "property damage";

**c.** First observes, or reasonably should have first observed, the "bodily injury" or "property damage", or the offense that caused the "personal and advertising injury";

**d.** Becomes aware, or reasonably should have become aware, by any means, other than as described in **c.** above, that "bodily injury" or "property damage" had occurred or had begun to occur, or that the "personal and advertising injury" offense had been committed or had begun to be committed; or

**e.** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury", "personal and advertising injury" or "property damage" is substantially certain to occur.

59. The Cincinnati Insurance Company policy also includes a number of Section I exclusions, which are also located primarily in the US 101 policy form. The potentially relevant exclusions include the following:

**B. Exclusions**
This insurance does not apply to . . .

**2. Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights**

"Personal and advertising injury":

***

**d.** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

***

**13. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually intended or expected.

However, this exclusion does not apply to:

**a.** "Bodily injury" resulting from the use of reasonable force to protect persons or property; or

**b.** "Bodily injury" or "property damage" resulting from the use of reasonable force to prevent or eliminate danger in the operation of "autos" or watercraft.

**14. Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses**

"Personal and advertising injury":

***

**c.** Arising out of a criminal act committed by or at the direction of the insured; or

60. The GA 101 policy form provides who is an insured in Section II – Who is An Insured:

**SECTION II - WHO IS AN INSURED**

**1.** Except for liability arising out of the ownership, maintenance, occupancy or use of an "auto":

**a.** If you are designated in the Declarations as:

***

**(4)** An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders. Each of the following is also a Named Insured:

**(a)** Any "subsidiary" company of such organization, including any "subsidiary" of such "subsidiary":

**1)** Existing at the inception of this Coverage Part; or

**2)** Formed or acquired on or after the inception of this Coverage Part.

**(b)** Any other company controlled and actively managed by such organization or any "subsidiary" thereof:

**1)** At the inception of this Coverage Part; or

**2)** If the control and active management thereof is acquired on or after the inception of this Coverage Part.

***

**b.** Each of the following is also an insured:

**(1)** Any "employee" of yours while acting within the scope of their duties as such.

61. The US 101 form includes a number of potentially relevant definitions including the following:

**4.** "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

***

**5.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multiyear policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**16.** "Occurrence" means:

**a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or

**b.** An offense that results in "personal and advertising injury".

All damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be deemed to arise from one "occurrence" regardless of:

**(1)** The frequency of repetition;

**(2)** The number or kind of media used; or

**(3)** The number of claimants.

**17.** "Personal and advertising injury" means injury, including "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** Abuse of process;

**d.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**e.** Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**f.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**g.** The use of another's advertising idea in your "advertisement";

**h.** Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

**i.** Discrimination, unless insurance coverage therefor is prohibited by law or statute.

***

**25.** "Underlying insurance" means the insurance listed in the Schedule of Underlying Insurance and the insurance available to the insured under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities that affords coverage that this Coverage Part covers.

62. In the Section IV – Conditions, the policy provides the following obligations an insured has:

**4. Duties in the Event of Occurrence, Claim or Suit**

***

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim or "suit". To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence".

This requirement applies only when the "occurrence" is known to an "authorized representative".

**b.** If a claim is made or "suit" is brought against any insured that is likely to involve this Coverage Part, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

This requirement will not be considered breached unless the breach occurs after such claim or "suit" is known to an "authorized representative".

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

***

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

. . .

**6. Legal Action Against Us and Loss Payments**

**a.** No legal action may be brought against us unless there has been full compliance with all the terms of this Coverage Part nor until the amount of the insured's obligation to pay has been finally determined as provided below. No person or organization has any right under this Coverage Part to bring us into any action to determine the liability of the insured.

**b.** We shall be liable for payment of the "ultimate net loss" for any "occurrence" to which this Coverage Part applies:

**(1)** For "occurrences" not covered by "underlying insurance"; or
**(2)** In excess of the "underlying limit" applicable to the "occurrence" only after the insurers who provide the applicable "underlying insurance" have paid or become obligated to pay the amount of the "underlying limit" applicable to the "occurrence".

Our payment will be made following final determination of the amount of the insured's obligation to pay either by final judgment against the insured or by written agreement with the insured, the claimant, the underlying insurers and us.

63. The Commercial Umbrella Liability Coverage is subject to the provisions of Endorsement Form US 371 09 02 (Sexual Misconduct or Sexual Molestation Limitation), which contains the following pertinent provisions:

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**

**I. SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to:

Any liability arising out of actual or alleged sexual misconduct or sexual molestation unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance and then only for such hazards for which coverage is afforded by such "underlying insurance".

**IV. Potential Duty to Defend or Indemnify**

64. Under Arkansas law, which applies in this diversity action, an insurer only has a duty to defend where the allegations in a complaint allege conduct that potentially falls within the coverage of a liability policy. An insurer only has a duty to indemnify when an injured party actually recovers against the insured for a loss within the policy's coverage.

65. Although Cincinnati has a duty to defend and potentially indemnify insureds against certain claims, those claims must allege "bodily injury" or "property damage" caused by an "occurrence" during the policy period. Coverage for such claims must also not be excluded under the terms of the policy Cincinnati issued.

66. Here, Cincinnati does not believe the Underlying Complaint falls within the coverage afforded by its policy.

67. Cincinnati does not believe the allegations in the Underlying Complaint fall within the Section I coverages as they are not of occurrences, not of "bodily injury", not of "personal and advertising injury", fall within the known loss provision, fall within the expected or intended injury exclusion, fall with the criminal acts exclusion, fall within the knowing violation exclusion, fall within the sexual misconduct or sexual molestation exclusion, are not made against an insured, do not fall within the policy period, and notice of the potential claims was not timely made to Cincinnati.

68. Under the policies, the only possible coverage would be under the Sexual Misconduct or Sexual Molestation Liability coverage.

69. However, Cincinnati does not believe this coverage applies.

70. First, Cincinnati believes the known loss provision stating it will not provide coverage for misconduct that began prior to the policy period and was known by an insured prior to the policy period applies to bar coverage.

71. Second, Cincinnati believes the exclusion for actually or allegedly participating in or condoning sexual misconduct or molestation applies to bar coverage.

72. Third, Cincinnati believes that the exclusion for sexual misconduct or sexual molestation first occurring prior to the beginning of the policy period applies to bar coverage.

73. Fourth, Cincinnati does not believe any underlying Defendant is an insured under this coverage.

74. Fifth, Cincinnati does not believe that the insured provided timely notice of sexual misconduct or sexual molestation.

75. Additionally, Cincinnati does not believe the Umbrella policy applies since it excludes sexual misconduct or sexual molestation that is not covered by the underlying insurance.

76. For these reasons and others that may become known during the discovery process in this action, Cincinnati respectfully requests that the Court enter a declaratory judgment finding that it has neither a duty to defend nor indemnify Refuge Church or Glover in connection with the claims alleged against them in the Underlying Complaint.

WHEREFORE, The Cincinnati Insurance Company respectfully requests that the Court enter a declaratory judgment finding that it has neither a duty to defend nor indemnify Refuge Church or Charles Michael Glover in connection with the claims alleged in the Underlying Complaint, and that it be given all relief to which it is entitled.

Respectfully submitted,

**RMP LLP**
17901 Chenal Parkway, Suite 200
P.O. Box 241370
Little Rock, AR 72223
501-954-9000 (phone) / 501-954-9005 (fax)
zhill@rmp.law

BY: Zach Hill
ZACHARY R. HILL, ABN 2019132
*Attorney for Plaintiff, The Cincinnati Insurance Company*